Rabin, J.
These three cases, which we consider together, present in varying contexts the issue whether a parent may be held liable for failure to adequately supervise an infant child. This fundamental question has not previously been resolved by this court because two procedural doctrines have prevented our direct consideration of the underlying substantive tort issue. The court-created intrafamilial immunity doctrine prevented our reaching the question in situations where the injured child sued his parent directly. Where the child sued a third party *40 for negligence, the defendant was barred by statute[1] from raising a defense of the parent’s contributory negligence in failing to provide proper supervision. But recent decisions of this court have removed some of the procedural impediments created by these doctrines, and now require us to consider the substantive issue of the parent’s liability for negligent supervision of his infant child.
Gelbman v. Gelbman (23 N Y 2d 434) abrogated the defense of intrafamilial immunity for nonwillful torts. There, we held that a mother could maintain a negligence action against her 16-year-old unemancipated son for injuries she sustained as a passenger in an automobile driven by the son. The suit between parent and child, which, as between passenger and driver, would otherwise have been an ordinary negligence action, was thereby allowed. In abolishing the immunity defense, it was noted that no new intrafamilial liabilities were being created, but merely that recovery previously barred would thenceforth be allowed. In the present case, we must consider whether to recognize a new liability owing from parents to their children for negligent supervision.
Dole v. Dow Chem. Co. (30 N Y 2d 143) enlarged the availability of apportionment among joint tort-feasors. Today we must decide whether damages may be apportioned between a parent who failed to adequately supervise his child and a third party who injured the child, without resulting, in substantial effect, in an imputation of the parent’s negligence to the child, in violation of the statutory directive contained in section 3-111 of the General Obligations Law.
Thus, the cases we decide today require us to specify the breadth of the path which we ventured upon in Gelbman, and to define its intersection with what will surely be the long, winding road of Dole. For reasons which follow, we have concluded that a child does not have a legally cognizable claim for damages against his parent for negligent supervision, and, in each *41 case, we affirm the order of the Appellate Division. We proceed to set forth the facts of the three cases before us.
Graney v. Graney
The infant plaintiff in the Graney case fell from the third or fourth step of an 11-foot-high slide in a school playground. At the time of the fall, the infant was four years old and had been accompanied to the playground by his father who allegedly allowed the infant to stray from his immediate control. The infant, by a guardian ad litem, now sues his father. It is claimed that the father negligently permitted his son to engage in dangerous play activity without adequate warning or supervision. The father, by his attorney, moved to dismiss the complaint for failure to state a cause of action. Special Term granted the motion, and the Appellate Division affirmed, one Justice dissenting, finding that no cause of action exists for negligent supervision. The infant plaintiff appeals as of right.
Ryan v. Fahey
While playing in a neighbor’s backyard, the three-year-old Eyan infant’s hand was run over by a power-driven riding lawnmower operated by the neighbor’s eight-year-old son. The mothers of both children were inside the neighbor’s house at the time. The Eyan infant, by his father, sues his mother for negligently permitting her son to play in the yard under the circumstances and for failing to supervise, warn and protect him. The infant also sues the eight-year old for negligent operation of the lawnmower and the eight-year-old’s mother for failure to supervise her son while he was operating the lawnmower in an area where other children were playing. The infant’s father also brings a derivative action against the three defendants for medical expenses.
The case comes to us in the posture of Mrs. Byan’s motion to dismiss the complaint as to her.[2] Special Term denied the motion and the Appellate Division unanimously reversed, find *42 ing that the infant’s suit against his parent for negligent supervision was not within the contemplation of the Court of Appeals in Gelbman and that, in any case, negligent supervision is not a tort. Mrs. Eyan’s motion to dismiss the complaint as to her was granted, and the remaining parties appeal as of right.
Holodook v. Spencer
The Holodook infant, at age four, allegedly darted out from between parked cars and was struck by an automobile driven by defendant. The infant, by his father, sued for personal injuries and his father brought a derivative action for both medical expenses and loss of services. The defendant then brought a third-party action for indemnification and apportionment of responsibility pursuant to Dole v. Dow Chem. Co. (30 N Y 2d 143, supra) against the infant’s mother alleging that at the time of the accident the infant was in her custody and that she negligently failed to perform her parental duty to instruct, control and maintain her child. Defendant also-counterclaimed for Dole apportionment and contribution against the infant’s father alleging negligent failure to provide for the proper care, maintenance and supervision of his child. The infant’s parents then moved to dismiss the third-party complaint and the counterclaim for failure to state a cause of action. Special Term denied the motion finding that Gelbman had completely removed the bar against intrafamilial suits, that Dole permitted the claims over against the parents and that a parent’s negligent supervision of his child is an actionable tort. The Appellate Division reversed, one Justice dissenting, stating that while Gelbman might be read to allow survival of the immunity rule in the area of parental functions, this was unnecessary since a parent’s misjudgment in supervising his child does not amount to the breach of a legal duty and therefore is not a tort. As a consequence, the court granted the parents ’ motion to dismiss the Dole counterclaim and third-party complaint for failure to state a cause of action. Defendant, third-party plaintiff, appeals as of right and is opposed not only by the third-party defendant, Mrs. Holodook, but, unlike the Graney and Ryan cases, by the infant plaintiff apd his father as well.
*43 I. Background.
As stated, in Gelbman we abrogated the defense of intrafamilial immunity for nonwillful torts. In so doing, it was necessary to overrule three earlier cases which, based upon the doctrine of intrafamilial tort immunity, had disallowed suits by children against their parents for injuries sustained as passengers in automobiles alleged to have been negligently operated (Sorrentino v. Sorrentino, 248 N. Y. 626; Cannon v. Cannon, 287 N. Y. 425; Badigian v. Badigian, 9 N Y 2d 472). In Gelbman, we noted that the principal reason advanced in support of this doctrine — preservation of family harmony — had been effectively removed in that case by New York’s compulsory automobile insurance. (See Dunlap v. Dunlap, 84 N. H. 352, 370-372.) Since the reasons for the rule no longer justified it, the doctrine was abrogated. The decision approved the dissent of Judge Fuld, later Chief Judge, in Badigian v. Badigian (9 N Y 2d 472, 474-492, supra) in which he contended that a three-year-old child injured when he released the parking brake in his father’s automobile should be permitted to recover against the father for his negligence in leaving the car unlocked. By way of criticism, he noted the many exceptions to the immunity rule. Thus, the family relation afforded no immunity if the child were emancipated or of legal age. An unemancipated minor child could sue his parent for breach of contract, injuries to his property, injuries sustained in the course of employment and intentionally inflicted injury. The thread common to the exceptions was that the family relation, in the eyes of the law, had terminated (in the case of emancipation or legal age), been abandoned (in the case of intentionally inflicted injury), or was logically irrelevant to the alleged wrong (in the case of contract, property damage or injury in the course of employment). The negligent operation or maintenance of an automobile might be said to fall within the last category. Judge Fuld suggested that the parent be held answerable for negligence “ which, if shown to one not a child * * * would be at least a civil wong.” (Badigian v. Badigian, supra, dissenting opn. at p. 481.) We note that Gelbman made no express exception for the failure to perform a “ parental duty ” (cf. Dunlap v. Dunlap, 84 N. H. 352, 361 et seq., supra) or, more specifically, for
*44 the exercise of parental authority (disciplinary acts) and the performance of duties to provide food, clothing, housing and medical care. (Cf. Goller v. White, 20 Wis. 2d 402; Silesky v. Kelman, 281 Minn. 431.) Nor did Gelbman expressly confine itself to cases of civil liability for nonwillful torts between parent and child “ for acts which if done by one ordinary person to another would be torts ’ ’. (McCurdy, Torts Between Persons in Domestic Relation, 43 Harv. L. Rev. 1030.) As will appear, this latter qualification, the same as that made by Judge Ftjld, is the effect of our decision today.
II. A parent’s negligent failure to supervise his child is not presently recognized in New York as a tort, actionable by the child.
In abolishing the immunity defense, Gelbman allows suits between parents and children which would previously have been actionable between the parties absent the family relationship. It also opens for exploration the area o^ duties which exist because of the family relationship, and which, if breached, entail legal consequences. We ask whether a parent owes a legal duty to supervise his child giving rise to an action for damages for negligent performance of that duty, and if so, to whom that duty is owed — whether only to third parties who may be injured by a negligently supervised child, or whether the duty is also owed personally to the child to be protected by his parent from accidental injury.
Of the many duties arising from the parent-child relation, only very few give rise to legal consequences for their breach. Parents are obligated in accordance with their means to support and maintain their children — i.e., to furnish adequate food, clothing, shelter, medical attention and education. A parent’s failure to observe minimum standards of care in performing these duties entails both remedial sanctions, such as the forfeiture of custody, and criminal sanctions. (See Family Ct. Act, § 1012, subd. f, par. [i], cl. [A]; Penal Law, § 260.05.) Parents are also obligated to provide proper guidance and guardianship of their children and are vulnerable to legal sanction for failure to meet minimum standards of care, for example, by the excessive infliction of corporal punishment, by the excessive use of drugs or alcohol, or by directing or authorizing a child under *45 16 to engage in an occupation involving substantial risk of danger to Ms life or health. (See Family Ct. Act, § 1012, subd. f, par. [i], cl. [B]; Penal Law, § 260.10.) Parents are also obligated to supervise their children. Failure to supervise may entail legal consequence where injury to a third party results, for example, under circumstances where a parent negligently entrusts to his child a dangerous instrument, or an instrument potentially dangerous in the child’s hands, so as to create an unreasonable risk to others. (Cf. Steinberg v. Cauchois, 249 App. Div. 518; Carmona v. Padilla, 4 A D 2d 181, affd. 4N Y 2d 767; compare Kuchlik v. Feuer, 239 App. Div. 338, affd. 264 N. Y. 542, with Napiearlski v. Pickering, 278 App. Div. 456.) Our research discloses no appellate case in New York in which a parent, prior to recognition of the immunity doctrine in Sorrentino v. Sorrentino (248 N. Y. 626, supra), has been held answerable to his child in damages for negligent supervision. Thus, the law has in the past interjected itself into the family relation to the limited extent of assuring support and guidance personally to the child and of providing a remedy in limited circumstances to third persons who are injured by a negligently supervised child. Beyond this, in New York the law has not ventured into the realm of duties owed by parents to their children. Historically, then, negligent supervision has not been a tort, actionable by the child.
III. A parent’s negligent failure to supervise his child should not now be recognized as a tort, actionable by the child.
The element which persistently stands out as we consider and contrast these eases and the implications of our decision on future cases, is the potential impact of Dole apportionment and contribution upon the fundamental family relation between parent and child. We can conceive of few, if any, accidental injuries to children which could not have been prevented, or substantially mitigated, by keener parental guidance, broader foresight, closer protection and better example. Indeed, a child could probably avoid most physical harm were he under his parents’ constant surveillance and instruction, though detriment more subtle and perhaps more harmful than physical injury might result. If the instant negligent supervision claims were allowed, it would be the rare parent who could not conceivably be called to account *46 in the courts for his conduct toward his child, either by the child directly or by virtue of the procedures allowed by Dole.
In answering the question posed, we face the same policy considerations as provided the basis for the prior immunity rule. (See McCurdy, Torts Between Persons in Domestic Relation, 43 Harv. L. Rev. 1030, 1072-1077; Akers and Drummond, Tort Actions Between Members of the Family, 26 Mo. L. Rev. 152, 193-197; Prosser, Torts [3d ed.], pp. 865-866; Ann., 19 ALR 2d 423; Ann., 41 ALR 3d 904.) In those eases where it is likely that there is no insurance coverage, these considerations include the prevention of family discord and the correlative concern to preserve the family’s resources for the aid of all its members. On the 'other hand, where insurance is present, there is the danger of fraud and collusion between parent and child. If we were concerned merely with potential direct actions between child and parent for negligent supervision, as in the Graney and Ryan cases, we might grant more force to the argument that few such suits would be brought except to obtain the lawful benefits and protections of liability insurance (cf. 2 Harper and James, Law of Torts, § 13.4, p. 767). This court has already recognized that danger of fraud and collusion is not a sufficient basis for denial of an otherwise valid claim, since fraudulent suits can be identified by diligent insurance carriers and by traditional reliance on courts and juries. (Badigian v. Badigian, 9 N Y 2d 472, dissenting opn. at p. 480; Gelbman v. Gelbman, 23 N Y 2d 434, 439, supra.)
But the path we tread in these cases has greater obstacles, some of which may impede or effectively prevent the child’s recovery for injuries caused, in whole or in part, by the ordinary negligence of a third party. While children whose parents are covered by liability insurance might be expected to find their claims prosecuted eagerly, vulnerability to a suit for contribution might make uninsured parents reluctant to assert their child’s rights. Thus, the net effect of allowing Dole apportionment could well be the parent’s failure to seek legal redress on the child’s behalf against third parties who are more likely than the parent in these cases to have appropriate liability coverage. This is an effect obviously detrimental to the injured child. (See and compare Siegel, Practice Commentaries, McKinney’s Cons. Laws of N. Y., Book 7B, CPLR 3019, p. 246 et seq.) Con *47 versely, in cases where the parents proceed to prosecute their child’s action diligently and are themselves ultimately held liable for contribution for a percentage of the recovery because of their failure to supervise, family strife is a predictable consequence where insurance is absent.
It is apparent that the considerations which led us in the compulsory insurance situation presented in Gelbman to relax the immunity doctrine now militate against recognition of the negligent supervision cause of action urged upon us by appellants herein. In a large part, it was our anticipation of this type of claim which cautioned us for so long against abrogation of the immunity rule. Thus, in Cannon v. Cannon (287 N. Y. 425, 429) this court stated: “ Indeed, if within the wide scope of daily experiences common to the upbringing of a child a parent may be subjected to a suit for damages for each failure to exercise care commensurate with the risk — for each injury caused by inattention, unwise choice or even selfishness — a new and heavy burden will be added to parenthood. ’ ’
Bather than providing a fund to compensate for the child’s injuries, as Judge Fuld suggested in his dissent in Badigian, a cause of action for negligent supervision would permit the nonparent defendant, who would more likely be insured, to effectively reduce the child’s compensation by means of a Dole apportionment with the negligent parent. It is artificial to separate the parent and child as economic entities by the assertion that the recovery of the nonparent defendant from the negligent parent does not technically diminish the injured child’s recovery. The reality of the family is that, except in cases of great wealth, it is a single economic unit and recovery by a third party against the parent ultimately diminishes the value of the child’s recovery. Even if scrupulous care were taken to see that the parent’s Dole contribution did not come out of the child’s recovery (see CPLR 1206), there would still be a strain on the family relationship, a result which our courts have consistently sought to avoid. We are quite 'aware that in most cases this strife within the family will result from Dole third-party complaints and counterclaims against an uninsured parent, whereas it might be less likely to result in cases of direct action by child against parent, as in Graney and Ryan, where insurance is likely to be present. Yet, we are not prepared to *48 find that the existence of insurance in the particular case provides a sufficient condition for the existence of a cause of action in negligence. While the presence and availability of insurance is a policy factor of considerable significance in intrafamilial tort cases, it does not enable us to treat the negligent supervision claim in Graney and Ryan any differently from that in Holodook. And, Holodook illustrates that if a negligent supervision claim is allowed, the rights and procedures granted to a defendant by Dole directly collide with policies of promoting family harmony.
When we consult the body of statutory law regarding parents’ specified duties to their children, we do not find a premise which leads us, by analogy or reasonable inference, to a conclusion that the legislative judgment on this subject would favor recognition of a child’s suit against his parent for negligent supervision. As we have indicated, the Legislature has intervened in the family relation only to a very limited degree. Moreover, the allowance of a counterclaim or third-party complaint against a parent for negligent supervision of his child would, we believe, be contrary to the legislative policy expressed in section 3-111 of the General Obligations Law because, in effect, it would result in imputation of the parent’s negligence to the child. That enactment, formerly part of the Domestic Relations Law, was a legislative nullification of early decisions which allowed a jury to consider a defense in bar of contributory negligence on the part of a plaintiff child by imputing to the child the negligence of the parent in failing to provide reasonable supervision (e.g., Weil v. Dry Dock, East Broadway & Battery R. R. Co., 119 N. Y. 147; Mangam v. Brooklyn R. R. Co., 38 N. Y. 455; Hartfield v. Roper, 21 Wend. 615). Section 3-111 provides that “ the contributory negligence of the infant’s parent * * *
shall not be imputed to the infant.” We recognize, of course, that with the advent of Dole contribution not all of the concerns embodied in section 3-111 are apposite, since the allowance of contribution among joint tort-feasors is not the same thing as a total bar to recovery because of contributory negligence. Thus, section 3-111 would not prohibit a Dole contribution where the parent’s conduct toward his child would be a tort “ if done by one ordinary person to another ”. (McCurdy, Torts Between Persons in Domestic Relation, 43 Harv. L. Rev. 1030.) In our *49 cases, however, the issue is whether the parent’s conduct in failing to provide proper supervision is actionable. Until the Legislature speaks more clearly to this point, we would read its enactment of the predecessor of section 3-111 as evincing a legislative concern that the parent’s failure to provide adequate supervision not be permitted to diminish or bar a child’s recovery against a third party. As Mr. Justice Mottle stated in his opinion for the court in By an (43 A D 2d 429, 435), any other result would gouge “ a gaping Dole loophole in section 3-111 of the General Obligations Law.”
The impact of Dole contribution on the child’s ultimate recovery and on the family unit is only one of the respects in which the still-valid policy considerations underlying the old immunity doctrine shape our conclusion in these cases. These policies also impinge when we consider the potential for abuse of a negligent supervision claim when brought in a retaliatory context between estranged parents, one suing the other on the child’s behalf, or by children estranged from their parents who could sue after reaching majority. In this regard, we note the tolling of the Statute of Limitations during the period of the child’s infancy. (CPLR 208.) An additional factor to be placed on the policy scale is the difficulty of judicial delimitation, either by court or by jury, of the bounds of the asserted right to supervision. The possibilities are virtually limitless, since, as we have stated, few injuries to children could not have been avoided by closer parental supervision.
We are aware that in other States where the immunity doctrine has been partially or totally abrogated, the duty to supervise has been recognized (Petersen v. City & County of Honolulu, 51 Hawaii 484; Cole v. Sears Roebuck & Co., 47 Wis. 2d 629; Thoreson v. Milwaukee & Suburban Transp. Corp., 56 Wis. 2d 231; Howes v. Hansen, 56 Wis. 2d 247). There is force to the argument that courts and juries should decide whether a particular defendant acted as a reasonable parent would have, under the circumstances (cf. Gibson v. Gibson, 3 Cal. 3d 914) and that cases decided by this court long ago in another context provide a basis for the recognition today of the child’s direct action against his parent. (See Mangam v. Brooklyn R. R. Co., 38 N. Y. 455, supra; see, generally, Ann., 51 A. L. R. 209 and cases cited therein; Restatement, 2d, Torts, § 496.) In most areas of tort *50 law, the reasonable man standard well serves the law’s general aim of structuring human activity in accordance with the community’s understanding and expectations of proper conduct. In the family relation between parent and child, however, we do not believe that application of this standardized norm is the wisest course. The result, we believe, would be to circumscribe the wide range of discretion a parent ought to have in permitting his child to undertake responsibility and gain independence. As Mr. Justice Greenblott so well said in his opinion for the majority in Holodook (43 A D 2d 129, 135): “ The duty to supervise a child in his daily activities has as its objective the fostering of physical, emotional and intellectual development, and is one whose enforcement can depend only on love. Each child is different, as is each parent; as to the former, some are to be pampered while some thrive on independence; as to the latter, some trust in their children to use care, others are very cautious. Considering the different economic, educational, cultural, ethnic and religious backgrounds which must prevail, there are so many combinations and permutations of parent-child relationships that may result that the search for a standard would necessarily be in vain — and properly so. Supervision is uniquely a matter for the exercise of judgment. For this reason parents have always had the right to determine how much independence, supervision and control a child should have, and to best judge the character and extent of development of their child.”
The mutual obligations of the parent-child relation derive their strength and vitality from such forces as natural instinct, love and morality, and not from the essentially negative compulsions of the law’s directives and sanctions. Courts and Legislatures have recognized this, and consequently have intruded only minimally upon the family relation. This is so, and properly, because the law’s external coercive incentives are inappropriate to assuring performance of the subtle and shifting obligations of family. Of course, where the duty is ordinarily owed, apart from the family relation, the law will not withhold its sanctions merely because the parties are parent and child. This is the consequence of Gelbman. There, the duty to drive carefully was owed to the world at large and derived from the parties’ relation as driver and passenger; that the *51 parties were also child and parent was a fortuitous fact, irrelevant to both the duty and to a determination of its breach. By contrast, the eases before us involve a parent’s duty to protect his child from injury — a duty which not only arises from the family relation but goes to its very heart. Gelbman did not pave the way for the law’s superintendence of this duty.
Like the Appellate Divisions, which so', thoughtfully approached these cases before they came to us (see, also, the analysis of the Second Department in the similar case of Lastowski v. Norge Coin-O-Matic, 44 A D 2d 127), we are not persuaded that a parent’s failure to supervise his child is, or on balance should be, a tort actionable by the child. We hold, therefore, that the infant plaintiffs have no cause of action against their parents for negligent supervision in the cases before us. Because the secondary right to contribution in these cases is dependent upon the parent’s alleged failure to perform a duty owing to the plaintiff child, the absence of the primary cause of action defeats the counterclaim and third-party complaint in Holodook and, if made, the cross claim in Ryan.
Accordingly, in each ease, we affirm the order of the Appellate División.

. Section 3-111 of the General Obligations Law (formerly Domestic Relations Law, § 73) provides: “Negligence of parent or other custodian not imputed to infant — In an action brought by an infant to recover damages for personal injury the contributory negligence of the infant’s parent or other custodian shall not be imputed to the infant,”

. The Appellate Division stated in its opinion and the defendant neighbors (Faheys) claim in their brief that prior to the motion to dismiss, the Faheys had cross-claimed against Mrs. Ryan for contribution, but such a cross claim is absent from the record before us.