Gabrielli, J.
(concurring). While the majority has reached the correct result in this case, problems with its rationale compel me to concur separately. I do not agree with the holding that the counterclaim by Gesuale can be sustained in the absence of direct liability of the parent towards the child, but since I would hold that facts sufficient to support a direct claim by the child have been pleaded, I would sustain the counterclaim.
As pointed out by the dissent, third-party liability does not exist in the absence of a duty owed by the third-party defendant to the plaintiff (see, e.g., Barry v Niagara Frontier Tr. System, 35 NY2d 629; Rogers v Dorchester Assoc., 32 NY2d 553). In this case the well-established rule under Dole v Dow Chem. Co. (30 NY2d 143) precludes the counterclaim unless we also recognize the existence of a cause of action by the child against the parent. Since I would find no impediment to the direct child-parent suit in the instant case, and in a limited range of other situations, there is no problem with the counterclaim.
The majority correctly perceives that the decision to entrust a child with an allegedly dangerous instrument invariably involves parental discretion and could perhaps arguably be classified as negligent supervision. This should not, however, end our inquiry into the direct liability of the parent to the child (cf. Holodook v Spencer, 36 NY2d 35). Where the instrument given to the child is so obviously capable of causing harm to the child that the parental behavior can be classified as wanton, willful, or gross negligence, then the conduct has gone far beyond the bounds of ordinary parental discretion and should be actionable.
The type of conduct I refer to is distinguishable from the *343 class of behavior termed "negligent supervision” which we refused to recognize as actionable in Holodook. Three cases were decided together in that opinion; Graney v Graney involved a parent supervising his child at the playground where the child fell from a slide; Ryan v Fahey involved a parent supervising her child in a neighbor’s yard where the child was injured by a lawn mower, and Holodook v Spencer involved a parent supervising a child who darted between parked cars into the street where he was struck by an automobile. No allegation was or reasonably could have been made that the parental conduct constituted gross negligence, rather each accident occurred during the course of normal, albeit arguably negligent, parental supervision. We discussed the weighty policy considerations against imposing liability on the negligent parent, and based our decision in each case to deny the children involved any recovery on the importance of those considerations.
These policy arguments are much less compelling when the act complained of is more egregious than mere negligent supervision. In fact, in Holodook we were most concerned with the problems inherent in judicial determinations establishing a standard of what is good parental care. This does not present a problem when the act complained of is grossly negligent, for then the standard of care may readily be defined without infringing on the vast domain best left to parental discretion. Careful jury instructions will ensure that recovery is permitted only in egregious cases, while at the same time there is no unnecessary interference with the family unit.
To refuse to recognize certain conduct as tortious is to declare that no matter how heinous the parental behavior we will not compensate the child. To cloak this result in the term "parental discretion” will not strengthen the familial bonds at least insofar as the victim is concerned. We should not shirk the duty to establish a minimal standard of care below which no one should be permitted to fall.
This is not to say that intrafamilial suits should bé allowed for all conduct that would be actionable if it were between nonrelated persons. Only when the fact finder finds wanton, willful, or gross negligence should recovery be allowed. If a reasonable parent who is aware of the mental and physical characteristics of the child and all the surrounding circumstances would be shocked that any parent would perform the act or omission complained of, the injured child should be *344 compensated. Any act which is less egregious is best described as a breach of the duty " 'whose enforcement can depend only on love’ ” (majority opn, p 338), and we should not interfere.
The facts alleged in this case are sufficient to state a claim. The pleadings, taken together, state the severe vision impairments suffered by the child and the action of his father in providing him with a motorcycle. Testimony at trial could conceivably prove gross negligence. Important of course would be the quality of the child’s vision, his ability to ride a motorcycle, the instruction given to him before riding, the restrictions placed on his activities, and any other evidence that might show gross negligence by the parent. Although this case may be difficult to prove, I cannot say as a matter of law at this stage of the litigation involving only the pleadings that it would be impossible to establish gross negligence.
Any other result would be inequitable. Insofar as direct suits by the child against the parent are concerned, to deny the child the right to sue means that regardless of how egregious the conduct, the child must suffer his injuries uncompensated. Let us assume a parent decides that a loaded revolver is a suitable toy for his five year old, or that it is safe for a two year old to swim unattended and the child is injured, fatally or otherwise. The majority would hold that any claim resulting therefrom would be beyond the scope of a negligence action, thereby denying the child a right which any other injured person possesses to seek compensation for a wrong.
Moreover, it would be unjust to deny a third-party claim or counterclaim against the parents by a party whose negligence is only an insignificant contributing cause of the injury. That third party may have only been a minor cause of the damage, and under Dole apportionment principles he would be entitled to seek contribution from the parent. This he cannot do if there is no direct liability from the parent to the child. The result is a penalty against a marginally negligent tort-feasor while the parent is not responsible for any of the loss. In fact, in situations such as the instant case, the parent may even receive substantial economic gains as a result of the law suit.
These unfortunate results would not apply were we to recognize the counterclaim in the instant suit. At the same time, the result remains consistent with Dole v Dow Chem. Co. (30 NY2d 143, supra) and the cases which follow it, by *345 only recognizing the counterclaim where it is reasonably foreseeable that the parent’s gross negligence will be actionable by the injured child.
Accordingly, I vote to reverse and reinstate the counterclaim by defendants against Walter L. Nolechek.