841 F.2d 38
 Debra BADER, an infant by her father and natural guardian,
Allan BADER, and Allan Bader, Plaintiffs,
v.
Robert PURDOM and Beverly Purdom, Defendants-Third-Party
Plaintiffs-Appellants,
v.
Allan BADER and Fran Bader, Third-Party Defendants-Appellees.
 No. 190, Docket 87-7331.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 6, 1987.
Decided March 3, 1988.
 
 James M. Kaplan (Bernard C. Byrnes, Wilson, Elser, Moskowitz, Edelman & Dicker, New York City, of counsel) for defendants-third-party plaintiffs-appellants.
 David P. Franks (Frank L. Amoroso, Miriam E. Villani, Rivkin, Radler, Dunne & Bayh, Uniondale, N.Y., of counsel) for plaintiffs-third-party defendants-appellees.
 Before LUMBARD, PIERCE and MINER, Circuit Judges.
 MINER, Circuit Judge:
 
 
 1
 Appellants Robert and Beverly Purdom appeal from a judgment entered in the United States District Court for the Eastern District of New York (Korman, J.), granting summary judgment in favor of appellees Allan and Fran Bader and dismissing the Purdoms' third-party complaint. We reverse on the ground that Ontario, not New York, law applies to the Purdoms' third-party complaint, and remand for further proceedings.
 
 BACKGROUND
 
 2
 In August and early September of 1982, Allan and Fran Bader and their three children, all United States citizens residing in New York, visited Robert and Beverly Purdom and their two children, Canadian citizens, at the Purdoms' farm in Ontario, Canada. According to the Purdoms, the Bader children, especially four-year old Debra, were overly attentive to the Purdoms' dog, Happy. The Purdoms assert that after observing the Baders' constant attention to Happy, Mrs. Purdom warned the Bader family to leave the dog alone and instructed them not to let the dog into the house during mealtimes.
 
 
 3
 On the morning of September 1, 1982, the Baders were seated at the kitchen table eating breakfast. Debra, who was sitting on her mother's lap, was trying to play with Happy, who was under the table. Mrs. Purdom alleges that immediately before the accident, she saw Mrs. Bader set Debra on the floor underneath the table, presumably to play with the dog. Moments later, Debra screamed. Unhappily, Happy had attacked and injured Debra.
 
 
 4
 In March 1984, Allan Bader, on behalf of himself and his daughter, Debra, commenced this action against the Purdoms in the United States District Court for the Eastern District of New York, seeking money damages for Debra's personal injuries and loss of Debra's services. In June 1984, the Purdoms answered, and in July 1984, they filed a third-party complaint against Allan and Fran Bader, seeking indemnification and contribution for the Baders' negligence and negligent supervision of Debra. The Purdoms' claims were based generally on the laws of the Province of Ontario, Canada, and specifically upon an Ontario statute, The Dog Owner's Liability Act, Ont.Rev.Stat. ch. 65 (1980).
 
 
 5
 The Baders moved to dismiss the Purdoms' third-party complaint, pursuant to Fed.R.Civ.P. 12(b)(6), on the grounds that New York law applied to the third-party action, and that New York did not recognize a claim against parents for the negligent supervision of their children. The district court agreed. The court found that the lex loci delecti rule ordinarily employed by New York did not apply to the third-party action because New York's strong policy interest in barring negligent parental supervision suits constituted "extraordinary circumstances," justifying departure from the lex loci delecti rule. By order dated April 29, 1985, the court (Bramwell, J.) therefore dismissed the third-party claims that were grounded in negligent parental supervision.
 
 
 6
 After discovery, the Baders moved for summary judgment and dismissal of the remainder of the third-party complaint. By order dated March 27, 1987, the court granted these motions, finding that the only tortious acts allegedly committed by the Baders sounded in negligent parental supervision. On March 30, 1987, judgment was entered accordingly.
 
 DISCUSSION
 
 7
 As a threshold matter, the district court was bound to apply New York choice of law rules to the third-party action because New York was the forum state. See Machleder v. Diaz, 801 F.2d 46, 51 (2d Cir.1986), cert. denied sub nom. Machleder v. CBS, Inc., --- U.S. ----, 107 S.Ct. 1294, 94 L.Ed.2d 150 (1987).
 
 
 8
 New York employs an "interest analysis" to resolve choice of law conflicts: " '[T]he law of the jurisdiction having the greatest interest in the litigation will be applied and ... the [only] facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict.' " Schultz v. Boy Scouts of America, Inc., 65 N.Y.2d 189, 197, 491 N.Y.S.2d 90, 95, 480 N.E.2d 679, 684 (1985) (citations omitted). "Under this formulation, the significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort." Id. (citations omitted).
 
 
 9
 If New York law applies to the present case, the third-party plaintiffs will not be able to recover on the negligent supervision claim, because New York does not permit third parties under such circumstances to recover against a parent for negligent supervision of his child. The New York rule derives from the doctrine of intrafamily tort immunity, which prohibits a child from recovering damages for his parents' negligent supervision. As a corollary to this doctrine, New York law does not permit a nonparent tortfeasor, whose negligence has injured a child, to recover contribution from the child's parents under a theory of negligent supervision because (1) parents who are vulnerable to suits for contribution might be reluctant to assert their children's rights against third parties; (2) family tensions may increase in the event that parents do sue, and are subsequently held liable for contribution; (3) requiring contribution from the negligent parent may effectively reduce the child's compensation, given that the typical family is a "single economic unit;" and (4) the state should preserve a sphere of parental autonomy. Holodook v. Spencer, 36 N.Y.2d 35, 46-48, 364 N.Y.S.2d 859, 868-69, 324 N.E.2d 338, 344-45 (1974). Thus, the New York rule purports to protect the interests of New York children and their parents over the interests of nonparent tortfeasors.
 
 
 10
 On the other hand, the Ontario statute at issue in this case, the Ontario Dog Owners' Liability Act, holds dog owners strictly liable for injuries caused by their dogs, but mitigates the harshness of strict liability by permitting dog owners to sue for contribution and indemnification "from any other person in proportion to the degree to which the other person's fault or negligence caused or contributed to the damages." Ont.Rev.Stat. ch. 65 at 379. In other words, Ontario law would permit the third-party plaintiffs herein to recover under a theory of negligent parental supervision. See, e.g., Sgro v. Verbeek, 28 O.R.2d 712, 719 (1980), and cases cited therein. Thus, in the present case a "true conflict" exists because application of the New York rule would undermine Ontario's interest, while application of the Ontario rule would undermine New York's interest.
 
 
 11
 As a general rule, New York courts resolve true conflicts in tort cases by applying the law of the place of injury, unless "special circumstances" warrant a departure from the lex loci delicti rule. See, e.g., Neumeier v. Kuehner, 31 N.Y.2d 121, 128, 335 N.Y.S.2d 64, 70, 286 N.E.2d 454, 458 (1972) (third rule). In our view, no such special circumstances are present in the case before us to warrant such a departure. In a case involving similar facts, the New York Appellate Division held that Nova Scotia law governed when Canadian defendants, whose alleged negligence had injured the infant plaintiff, cross-claimed against the infant's parents (residents of New York) under a theory of negligent parental supervision. See Hotaling v. Smith, 63 A.D.2d 219, 406 N.Y.S.2d 627 (3d Dep't 1978). Moreover, those cases in which New York courts have resolved true conflicts in favor of applying New York law, such as Rakaric v. Croatian Cultural Club, 76 A.D.2d 619, 430 N.Y.S.2d 829 (2d Dep't 1980), and Scharfman v. National Jewish Hosp., 122 A.D.2d 939, 506 N.Y.S.2d 90 (2d Dep't 1986), are readily distinguishable. In both cases, the nonresident defendants had undertaken substantial activities within New York, such as the solicitation in Manhattan of volunteers to assist in clearing some land in New Jersey, Rakaric, 76 A.D.2d at 632, 430 N.Y.S.2d at 838, or the renting of office space in New York, Scharfman, 122 A.D.2d at 941, 506 N.Y.S.2d at 92. We believe that under interest analysis, as applied by the courts of New York, Ontario law must govern in the present case.
 
 
 12
 The district court nonetheless concluded that New York's strong public policy interest in barring negligent parental supervision cases justified departure from the lex loci delecti rule normally applicable in this type of situation. We do not agree. First, the public policy doctrine is considered "only after the court has determined that the applicable substantive law under relevant choice-of-law principles is not the forum's law." Schultz, 65 N.Y.2d at 202, 491 N.Y.S.2d at 98, 480 N.E.2d at 687. Here, the district court never determined which law should apply under New York's choice-of-law principles. Second, the party seeking to invoke the public policy doctrine has the "heavy burden" of showing "that to enforce the foreign law 'would violate some fundamental principle of justice, some prevalent conception of good morals, [or] some deep-rooted tradition of the common weal' " as expressed in New York's Constitution, statutes and judicial decisions. Id. at 202, 491 N.Y.S.2d at 99, 480 N.E.2d at 688 (citations omitted). Although, as discussed above, New York bars claims for negligent parental supervision, we cannot say that allowing such suits would violate fundamental principles of justice, particularly when, as here, the New York domiciliaries voluntarily entered and vacationed in Ontario, and where all allegedly tortious conduct took place outside the borders of New York State.
 
 CONCLUSION
 
 13
 Based on the foregoing, the judgment is reversed and this action is remanded to the district court for further proceedings consistent with this opinion.
 
 PIERCE, Circuit Judge, concurring:
 
 14
 I agree with the majority that the case before this court presents a "true conflict" between the law of New York and the law of Ontario, and that under the choice of law principles developed by the New York Court of Appeals this conflict should be resolved in favor of applying Ontario law. I write separately, however, because I disagree with the majority's view that true conflicts are governed by the third rule set forth in Neumeier v. Kuehner, 31 N.Y.2d 121, 286 N.E.2d 454, 335 N.Y.S.2d 64 (1972). In conflicts terminology, the so-called "unprovided-for" or "no-interest" case arises when no state has a vital interest in having its own law apply. See, e.g., R. Cramton, D. Currie & H. Kay, Conflict of Laws 303-09 (3d ed. 1981). The third Neumeier rule applies to the unprovided-for case. See Korn, The Choice-of-Law Revolution: A Critique, 83 Colum.L.Rev. 772, 879 (1983) (third Neumeier rule governs unprovided-for cases, and certain types of true conflicts not governed by the second rule and not present in the instant case); Sedler, Interstate Accidents and the Unprovided for Case: Reflections on Neumeier v. Kuehner, 1 Hofstra L.Rev. 125, 136 (1973) (third Neumeier rule governs unprovided-for cases). See also Schultz v. Boy Scouts of America, 65 N.Y.2d 189, 201-02, 480 N.E.2d 679, 687, 491 N.Y.S.2d 90, 98 (1985) (applying third Neumeier rule to an unprovided-for case in which defendant's domicile was Ohio, plaintiff's domicile was New Jersey, and tort occurred in New York); Neumeier, 31 N.Y.2d at 128-29, 286 N.E.2d at 458, 335 N.Y.S.2d at 70 (applying third rule to an unprovided-for case). The second Neumeier rule, which governs true conflicts, applies by analogy to the case now before us, and compels us in the absence of "special circumstances" to apply the law of the place of injury, Ontario. Since the result in the present case is the same, however, whether the second or third rule applies, I respectfully concur in the judgment.