OPINION OF THE COURT
 

 Bellacosa, J.
 

 The precise question in this case is whether defendants-appellants, by their third-party complaint, may maintain a claim for negligent supervision over and against the mother of a young person who is developmentally disabled. He is the plaintiff in the primary action against defendants. Supreme Court dismissed the defendants’ third-party complaint and the Appellate Division unanimously affirmed. This Court granted leave and we now affirm.
 

 
 *578
 
 The underlying incident and events occurred in 1992. Plaintiff, then 20 years of age, accompanied his mother to Rotterdam Square Mall, owned by defendant Wilmorite. The mother shopped while her son stayed in an area where a carousel and video game arcade are located. The young man subsequently became involved in an altercation with another person. The arcade manager summoned assistance. Two security personnel, employed by defendant Genesee Management, responded. When words allegedly failed to calm plaintiff LaTorre, the security guards physically subdued and handcuffed him. Eventually, LaTorre sued defendants, alleging that the actions of their employees caused him both physical and psychological injuries.
 

 Defendants Wilmorite and Genesee countered with a third-party action against the young man’s mother. They seek contribution and indemnification from her on the theory that any damages suffered by her son were the result of her negligence in leaving him unsupervised. They allege that she had or ought to have had knowledge because plaintiff exhibits "propensities and tendencies of rejection of normal contact with other persons and of violent physical outbursts rendering him unfit and unsafe to be left alone [without] the control and supervision of his mother or persons of suitable age, training and experience in the problems and behaviors of mentally handicapped individuals.”
 

 The mother did not answer the defendants’ third-party complaint. Defendants then moved for summary judgment. They sought to dismiss LaTorre’s primary complaint against them or, in the alternative, for entry of a default judgment against his mother for the full amount of any judgment the plaintiff might obtain from them in the primary action. Supreme Court denied defendants’ motion and also dismissed their third-party complaint. The court held that since the third-party complaint was predicated on the nonactionable claim of negligent parental supervision, it thus failed to state a cognizable cause of action. Supreme Court stated that there is "no reason why
 
 [Holodook v Spencer,
 
 36 NY2d 35] should not apply with even greater force to counterclaims against parents of adults who allegedly suffer from mental disease or defect.” The Appellate Division affirmed (228 AD2d 995).
 

 The appeal to this Court necessitates that we analyze and harmonize our relevant precedents in relation to this case
 
 (see, e.g., Holodook v Spencer,
 
 36 NY2d 35,
 
 supra; Nolechek v Gesuale,
 
 46 NY2d 332), while also considering other pertinent
 
 *579
 
 authorities, developments and policies as they may relevantly bear on this triangulated tort case.
 

 A parent’s negligent failure to supervise a child is generally held not to constitute a tort actionable by the child
 
 (Holodook v Spencer,
 
 36 NY2d 35, 51,
 
 supra).
 
 Necessarily, where "[a] secondary right to contribution * * * is dependent upon the parent’s alleged failure to perform a duty owing to the plaintiff child, the absence of the primary cause of action defeats the counterclaim and third-party complaint”
 
 (id.).
 
 Otherwise, what is soundly forbidden directly would paradoxically be recognized and available indirectly.
 

 In
 
 Holodook,
 
 where a child sued for personal injuries arising from an accident in which he was struck by an automobile driven by a defendant, this Court dismissed that defendant’s third-party action for indemnification and apportionment of responsibility against the infant’s mother, asserted on the theory of her alleged negligent supervision
 
 (id.,
 
 at 51). The defendant there urged that the mother failed to properly control her child, who had allegedly "darted out” from between parked cars before he was struck by defendant’s automobile
 
 (id.,
 
 at 42).
 

 Holodook
 
 rests on significant and fundamental policy concerns. The Court discerned the roundabout wedge that apportionment and contribution would drive into the family relationship between parent and child
 
 (id.,
 
 at 45). Specifically,
 
 Holodook
 
 cautioned that generally recognizing parental negligent supervision claims would unwisely expose parents to virtually unlimited liability and undue stress in the endless variety of caretaking scenarios that might ultimately render parents amenable to crushing legal and financial responsibility and wrenching personal decisions
 
 (id.,
 
 at 45-46). The Court declared that "it would be the rare parent who could not conceivably be called to account in the courts for his [or her] conduct toward his [or her] child, either by the child directly” or through a third-party action for indemnification and apportionment
 
 (id.).
 
 It concluded that:
 

 "We can conceive of few, if any, accidental injuries to children which could not have been prevented, or substantially mitigated, by keener parental guidance, broader foresight, closer protection and better example. Indeed, a child could probably avoid most physical harm were he under his parents’ constant surveillance and instruction, though det
 
 *580
 
 riment more subtle and perhaps more harmful than physical injury might result”
 
 (id.,
 
 at 45).
 

 The Court was also mindful of the potential detrimental side-effects to injured minors. For instance, allowing recoupment by transferred liability in such situations might deter, diminish or bar a minor’s rightful recovery altogether against directly negligent parties
 
 (id.,
 
 at 46). In particular, the specter and fear of ultimate boomerang liability might well present parents with the conflicted choice of seeking legal redress on their child’s behalf or anticipatorily avoiding having to defend their own caretaking conduct and actions in courts
 
 (id.).
 
 Instead, the Court spared the parents such a Hobson’s choice. It rejected a tort policy system that would penalize parents who might dauntlessly proceed with their children’s legitimate claims, only to wind up with their intrafamily interests being pitted one against the other in a litigation vise with highly disfavored social, legal and fiscal consequences. The Court recognized the direct conflict inescapably flowing from the fact that the family is ordinarily a single economic unit and that, as such, a portion of a child’s recovery might have to be paid from the family resources, in dollars or in stress or both
 
 (id.,
 
 at 47).
 

 Furthermore, the Court distinguished the jurisprudence of other States which have recognized a wider duty to supervise
 
 (id.,
 
 at 49). The Court rejected the reasonable parent standard adopted by cited jurisdictions, concluding that the more appropriate course for New York is "to circumscribe the wide range of discretion a parent ought to have in permitting his [or her] child to undertake responsibility and gain independence”
 
 (id.,
 
 at 50). That is a very pertinent feature of the instant case. Additionally, consulting the body of statutory law relating to specified duties of parents and custodians to children, the Court concluded that the allowance of a counterclaim or third-party complaint for negligent supervision of children would contradict General Obligations Law § 3-111
 
 (id.,
 
 at 48), which provides that "[i]n an action brought by an infant to recover damages for personal injury the contributory negligence of the infant’s parent or other custodian shall not be imputed to the infant” (General Obligations Law § 3-111).
 

 Holodook’s
 
 foundation, then, is the concern for the inevitable "strain on the family relationship”
 
 (id.,
 
 at 47). Preeminently, the Court premised its holding on the importance of limiting potential legalistic litigation intrusions into families, reasoning that "[t]he mutual obligations of the parent-child re
 
 *581
 
 lation derive their strength and vitality from such forces as natural instinct, love and morality, and not from the essentially negative compulsions of the law’s directives and sanctions” (i
 
 d.,
 
 at 50). These express policy concerns persist and prevail again in resolving the instant legal permutation of essentially just another species of personal injury controversies.
 

 To fully address this part of our analysis, however, it is also necessary to consider
 
 Nolechek v Gesuale
 
 (46 NY2d 332,
 
 supra),
 
 a very specific and narrow complement to the predominant
 
 Holodook
 
 principle. We held in
 
 Nolechek
 
 that parents might owe some duty to third parties against their children’s
 
 “improvident use of a dangerous instrument,
 
 at least, if not especially, when the parent
 
 is aware of and capable of controlling its
 
 use”
 
 (Nolechek v Gesuale, supra,
 
 46 NY2d, at 338 [emphasis added]). In
 
 Nolechek,
 
 a father sued various defendants for the wrongful death of his son, killed in a motorcycle accident, alleging that the defendants had negligently permitted a dangerous condition to exist without any warnings or safeguards
 
 (id.,
 
 at 335-337). Defendants sought contribution over from the father, alleging that he negligently provided his son, blind in one eye and vision impaired in another, with the motorcycle
 
 (id.,
 
 at 335-336). This Court reinstated the defendants’ counterclaim.
 

 The extreme nature and countervailing force of the suing parent’s own affirmative negligent conduct manifestly affected the Court’s reasoning and decision to reinstate the counterclaim
 
 (id.,
 
 at 341-342;
 
 see also,
 
 Gabrielli, J., concurring, at 344). Indeed, the particularly pleaded features, emphasized by the Court, showed that the 16 year old "did not possess, and had never applied for, an operator’s license of any type” and that the motorcycle had been neither registered nor inspected
 
 (id.,
 
 at 337). The allegations, the juridical relationships of the parties, and the procedural framework of the instant case are in no way like
 
 Nolechek
 
 and, thus, the corollary of that case, flowing out of
 
 Holodook,
 
 has no application or relevance.
 

 Indeed, the
 
 Nolechek
 
 majority acknowledged that the " 'dangerous instrument’ exception” to the
 
 Holodook
 
 rule was "neither analytically persuasive nor practically sound” in any generalized sweep
 
 (id.,
 
 at 337-338); yet, the alleged extreme facts and circumstances there justified the variation from the application of the
 
 Holodook
 
 general parental immunity. The Court also stressed the obvious foreseeability component of an infant’s use of a dangerous instrument, like a motorcycle, concluding that "[a] dangerous instrument in the hands of an
 
 *582
 
 infant child may foreseeably cause various types of harm”
 
 (id.,
 
 at 340). The Court concluded that "[a] parent who entrusts an infant child with a dangerous instrument creates a danger to all society”
 
 (id.,
 
 at 341).
 

 The limited parental duty principle that emerges from
 
 Nolechek
 
 is thus designed "to protect third parties from the
 
 foreseeable
 
 harm that results from the children’s improvident use of
 
 dangerous instruments,
 
 to the extent that
 
 such use
 
 is subject to parental control”
 
 (id.,
 
 at 340 [emphasis added]). It is this distinctive parental duty to third parties that provided the alleged third-party tortfeasor in
 
 Nolechek
 
 with a basis for contribution from the parent. The
 
 Nolechek
 
 Court expressly distinguished
 
 Holodook,
 
 stating that the duty disallowed in
 
 Holodook
 
 would be one running from parent to child, with third-party concerns being implicated only incidentally; duties to third parties, and their scope, were not contemplated in
 
 Holodook
 
 because they range beyond the ken of previously recognized responsibilities in this tort context
 
 (id.,
 
 at 341). Furthermore, although a factor not deemed decisive, the Court in
 
 Nolechek
 
 added that since the child was already deceased, no additional strain on family relations could result, as in
 
 Holodook
 
 and here, from allowing assertion of that counterclaim
 
 (id.,
 
 at 341).
 

 Nolechek
 
 is therefore plainly distinguishable from the instant action due to the clearly foreseeable nature of a vision-impaired infant’s use of a motorcycle there and the specific allegations in the pleadings detailing the parent’s affirmative negligent actions. Additionally, the present case is even further removed from the
 
 Nolechek
 
 rationale because it involves a unique situation in which the parties seeking to claim over are the parties alleged to have actually injured the plaintiff. Therefore, as the instant case does not fall within the substantive or procedural
 
 Nolechek
 
 paradigm, the controlling
 
 Holodook
 
 rationale applies to defeat the defendants’ third-party complaint.
 

 Moreover, from a tort policy perspective, we believe that it would be unreasonable to burden parents and guardians generally, especially those charged with special responsibilities for children who happen to suffer developmental disabilities, by exposing them to rebound liability, flowing from a child’s or adult’s natural deficits or personal qualities merely on the basis of general allegations of the kind presented here. Some knowledge of a specific type of pertinently dangerous characteristics and particularly foreseeable conduct might find a theo
 
 *583
 
 retical tort construct to support recognition of some liability
 
 (see,
 
 Prosser and Keeton, Torts § 123, at 915 [5th ed] ["the effect of the decided cases is (probably) that there is no liability upon the parent unless (the parent) has notice of a specific type of harmful conduct, and an opportunity to interfere with it”];
 
 compare,
 
 Restatement [Second] of Torts § 319 [requiring knowledge]). That, however, is not this case and that, in any event, should be the rare, exceptional exposure, as particularized in
 
 Nolechek.
 

 We observe in passing that a line of Appellate Division cases acknowledges the existence of parental liability based on vicious propensities of children. The weight of the cases, however, has refused to impose liability due to insufficient record evidence establishing the child’s tendencies to engage in vicious conduct which might endanger third parties and the parents’ knowledge or notice of the child’s propensities in that regard
 
 (see, e.g., Brahm v Hatch,
 
 203 AD2d 640, 641;
 
 Adolph E. v Linda M.,
 
 170 AD2d 1011, 1012,
 
 Iv denied
 
 77 NY2d 809;
 
 Massapequa Free School Dist. No. 23 v Regan,
 
 63 AD2d 727, 728). We have no reason to resolve the application of the vicious propensity concept to situations like the one presented in cases of this kind because the record and allegations in this case are barren of the requisite specificity to even consider that debatable doctrinal hybrid.
 

 Notably, in
 
 Holodook,
 
 this Court commented on "the difficulty of judicial delimitation, either by court or by jury, of the bounds of the asserted right to supervision”
 
 (Holodook v Spencer, supra,
 
 36 NY2d, at 49). A major treatise comments that "it is not possible to state an exact rule as to the scope of 'parental discretion,’ ” for "it is clear that the parent-child relationship remains a special one and that not every act or omission by a parent will be regarded as actionable negligence, even if, as to some other persons, negligence might be found to exist” (Prosser and Keeton, Torts § 122, at 908 [5th ed]). We agree that step-by-step common-law incrementalism is appropriate to deciding this case by ruling against the defendants third-party plaintiffs on a principled harmonization of tort policy, precedents and relevant authorities.
 

 Defendants alleged in their third-party complaint that plaintiff LaTorre suffered from violent propensities and tendencies rendering him incapable of interacting with other persons. Defendants’ conclusory, generalized assertion is patently insufficient under presently governing principles to satisfy the requisite pertinent knowledge of the kind of danger
 
 *584
 
 ous propensities, attributed to plaintiff’s mother, that would place this case in a
 
 Nolechek-like
 
 category. In order for a third-party claim of this kind against a parent or guardian to withstand the force of
 
 Holodook,
 
 negligence must be alleged and pleaded with some reasonable specificity, beyond mere generalities. The extraordinariness or patent foreseeability of the particular situation are factors to be considered in determining whether a claim may be allowed to stand that would drive the entire family into a conflicted litigation experience.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Titone, Smith, Levine, Ciparick and Wesley concur.
 

 Order affirmed, with costs.