Tara F. WILSON, et al., Plaintiffs,

v.

WESTMORELAND FARM, INC.,
et al., Defendants.

No. CV 96–4528(ADS).

United States District Court,
E.D. New York.

Jan. 8, 1998.

Schneider, Kleinick, Weitz, Damashek &
Shoot, New York, NY, for Plaintiffs.

Harvey Feintuch, Feder, Connick & Goldstein, Mineola, NY, for Defendants.

## ORDER

BOYLE, United States Magistrate Judge.

Before the court is an application under
Rule 14 of the Federal Rules of Civil Proce-

dure, by the defendant, Westmoreland Farm, Inc. ("WMF"), to initiate a third-party action against Margaret K. Wilson, the natural mother and guardian of the infant plaintiff herein, who suffered severe facial injuries when she was kicked by a horse owned by two individual defendants, Elmer and Diane Kestler. The accident occurred on property owned and controlled by WMF and the Kestler defendants. Jurisdiction is based on diversity of citizenship. *See* 28 U.S.C. § 1332(a)(1).

For the reasons stated below, the application is denied.

## I. *FAILURE TO ADEQUATELY PLEAD A COGNIZABLE ACTION*

■ Negligent failure to supervise a child is not a cognizable action under the common law of the State of New York. *See Holodook v. Spencer*, 36 N.Y.2d 35, 51, 324 N.E.2d 338, 346, 364 N.Y.S.2d 859, 871 (1974) (no cause of action where mother of infant failed to control the child who "darted out" from between parked cars before being struck by the defendant's car). There are substantial reasons behind this policy: "The mutual obligations of the parent-child relation derive their strength and vitality from such forces as natural instinct, love and mortality, and not from the essentially negative compulsions of the law's directives and sanctions . . . ." *Id.* at 50, 324 N.E.2d at 346, 364 N.Y.S.2d at 871.

■ This policy is consistent with New York General Obligation Law § 3–111 which states that "[i]n an action brought by an infant to recover damages for personal injury the contributory negligence of the infant's parent or other custodian shall not be imputed to the infant." N.Y. Gen. Oblig. Law § 3–111 (McKinney 1997). New York does, however, recognize a cause of action against a parent for affirmative negligent conduct. See *Nolechek v. Gesuale*, 46 N.Y.2d 332, 336, 385 N.E.2d 1268, 1270, 413 N.Y.S.2d 340, 343 (1978). In *Nolechek*, the father sued the defendants for negligence in causing the wrongful death of his son, who was killed in a collision while riding a motorcycle. The court permitted a claim by the defendants against the father based on the allegations that the father had provided his infant son

with a motorcycle even though the son was blind in one eye and had impaired vision in the other. *Id.* at 335–336, 385 N.E.2d at 1270, 413 N.Y.S.2d at 342.

The most recent decision by the New York Court of Appeals in this area is *La Torre v. Genesee Management, Inc.*, 90 N.Y.2d 576, 665 N.Y.S.2d 1, 2, 687 N.E.2d 1284, 1285 (1997). The plaintiff, a twenty year old mentally impaired person, had accompanied his mother to the mall where he became involved in an altercation with security guards who had used physical force to take plaintiff into custody in connection with an arrest. The defendants sought contribution and indemnification from plaintiff's mother on the theory that she had knowledge of her son's antisocial "propensities and tendencies" and that she, therefore, should not have permitted him "to be left alone [without] the control and supervision of his mother or persons of suitable age, training and experience in the problems and behaviors of mentally handicapped individuals." *Id.*

In rejecting the third-party complaint for lack of sufficiency, the court noted the lack of specificity in the pleading as to the parent's knowledge of the dangerous propensity, as well as the lack of specifics as to the acts of negligence:

> Defendants' conclusory, generalized assertion is patently insufficient under presently governing principles to satisfy the requisite pertinent knowledge of the kind of dangerous propensities, attributed to plaintiff's mother, that would place this case in a *Nolechek*-like category. In order for a third-party claim of this kind against a parent or guardian to withstand the force of *Holodook*, negligence must be alleged and pleaded with some reasonable specificity, beyond mere generalities. The extraordinariness or patent foreseeability of the particular situation are factors to be considered in determining whether a claim may be allowed to stand that would drive the entire family into a conflicted litigation experience.

*Id.* at 583, 665 N.Y.S.2d at 4, 687 N.E.2d at 1287.

The proposed pleading by WMF suffers from the same defect. The relevant allegations of the third-party action are replete with vague generalities:

### COUNT I

4. ... MARGARET K. WILSON ... exercised maintenance, control, supervision, care over and harbored the horse Penny.

5. ... MARGARET K. WILSON ... occupied, possessed and exercised maintenance, control and/or supervision over that parcel of real property upon which the accident ... occurred.

6. ... MARGARET K. WILSON ... permitted the horse Penny to roam and/or to be harbored in an unrestrained manner upon the real property where the ... accident ... occurred.

7. ... MARGARET K. WILSON knew or should have known the propensities of horses in general and the horse Penny in particular.

8. ... MARGARET K. WILSON was the mother and natural guardian of the infant plaintiff ....

9. If plaintiffs were injured and damaged by anyone's fault, culpable conduct, or breach of duty, then such injuries and damages were due to plaintiffs' own assumption of risk, culpable conduct, breach of duty and negligence, and that of MARGARET K. WILSON as well. MARGARET K. WILSON assumed and carried out duties relating to Penny, other animals and the subject property. If it is determined that plaintiffs' alleged injuries and damages were the result of fault by anyone, then such injuries and damages were due, in whole or in part, to MARGARET K. WILSON's negligence and breach of duty assumed by her and in carrying out her duties with respect to Penny, the other animals, and the property over which she exercised maintenance and control.

### COUNT II

12. In the event the horse Penny is found by the trier of facts to have possessed dangerous, violent and/or ferocious natures, characteristics and/or propensities at the time of the alleged accident herein, third-party defendant MARGARET K. WILSON either knew or should have known that Penny possessed such dangerous, violent, and/or ferocious natures, characteristics and/or propensities.

13. That by reason of the foregoing, if defendant/third-party plaintiff WESTMORELAND FARM, INC. is found liable to plaintiffs, which liability it specifically denies, then defendant/third-party plaintiff is entitled to complete indemnity from third-party defendant MARGARET K. WILSON, or at the very least, contribution in an amount commensurate with the relative culpability of third-party defendant MARGARET K. WILSON, plus costs of this suit.

The third-party complaint proposed by WMF is insufficient to plead that "rare, exceptional exposure, as particularized in *Nolechek*." *La Torre*, 90 N.Y.2d 576, 583, 665 N.Y.S.2d 1, 4, 687 N.E.2d 1284, 1287. WMF has not demonstrated that it is entitled to relief in the proposed third-party action.

▪ The court notes that it is undisputed that the proposed third-party defendant, Margaret K. Wilson, was not an owner of the horse, Penny, which caused plaintiff's injury, nor did she own the land on which the accident occurred. As noted above, she is a shareholder and officer of WMF which owned and operated the farm premises where the accident occurred in Shelter Island Heights, New York, and she apparently lived at the farm and was in residence at the time of the accident. These facts give added credence to the plaintiff's objection that WMF's third-party complaint is a poorly camouflaged attempt to circumvent the strong policy interest in New York against litigation directed against a parent for negligent supervision of a child.

■ A court will dismiss a complaint where " 'it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief.' " *Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 1997 WL 765607, at *2 (2d Cir. Dec.15, 1997) (quoting *Hoover v. Ronwin*, 466 U.S. 558, 587, 104 S.Ct. 1989, 2005, 80 L.Ed.2d 590 (1984) (Stevens, J., dissenting)). The same standard applies to the denial of a motion to amend a pleading based on futility of the amendment. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) (explaining that futility of amendment presents grounds to deny leave to amend); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir.1993) (affirming district court's determination that no useful purpose would be served by granting the plaintiff leave to amend); *Kaster v. Modification Systems, Inc.*, 731 F.2d 1014, 1018 (2d Cir.1984) ("That the amendments would not serve any purpose is a valid ground to deny a motion for leave to amend."). Notwithstanding the persuasiveness of plaintiff's argument, in the event that WMF has facts to show that this is one of the extraordinary exceptions to the rule in *Holodook*, 36 N.Y.2d at 43, 324 N.E.2d at 341, 364 N.Y.S.2d at 865, the court's denial here is without prejudice to renewal.

## II. *NO LACK OF JURISDICTION*

■ The objection to the proposed pleading based on lack of subject matter jurisdiction is devoid of merit. Ancillary jurisdiction is based on considerations of "judicial economy, convenience and fairness to litigants." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). It permits the "joining of parties with respect to whom there was no independent basis of jurisdiction" *Aldinger v. Howard*, 427 U.S. 1, 10, 96 S.Ct. 2413, 2418, 49 L.Ed.2d 276 (1976), provided that the non-federal claim "satisfies the 'common nucleus operative fact' test set out in *Gibbs*." *Cam–Ful Industries, Inc. v. Fidelity and Deposit Company of Maryland*, 922 F.2d 156, 160 (2d Cir.1991) (quoting *Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138).

■ Here, as in *Cam–Ful Industries*, the "common occurrence" is fully satisfied. The third-party complaint relates to and arises from the incident that gives rise to the main action, i.e. the injury suffered by the infant plaintiff as a result of being kicked by the horse, Penny. Accordingly, the absence of diversity jurisdiction between the proposed third-party plaintiff, WMF, and third-party defendant, Margaret K. Wilson, a resident of New York, is not a basis for denial of this application.

## III. *LACK OF CONSENT BY WMF*

■ It is uncontroverted that the defendant, WMF, has not authorized a third-party action against its President and shareholder, Margaret K. Wilson, in her individual capacity. *See Affidavit of Margaret K. Wilson in Opposition to Westmoreland's Application to Amend its Answer to Initiate a Third–Party Action*, dated December 16, 1997. While the court's denial of the motion is not predicated on the absence of corporate authorization, the court notes that in the absence of lawful authorization by WMF, a third-party complaint brought in the corporation's name may not lawfully proceed. *Koral v. Savory, Inc.*, 276 N.Y. 215, 217, 11 N.E.2d 883, 884–85 (1937) ("A course of action for wrong done to the corporation belongs to the corporation.... the question whether the corporation should seek to enforce in the courts a cause of action for damages is, like other business questions, ordinarily a matter of internal management and is left to the discretion of the directors, in the absence of instruction by vote of the stockholders."). *See also* New York Bus. Corp. Law § 701 (McKinney 1997); *Sterling Indus., Inc. v. Ball Bearing Pen Corp.*, 298 N.Y. 483, 84 N.E.2d 790 (1949) ("We have consistently held that ... the business of a corporation shall be managed by its board of directors...."). Nor is this a situation involving a derivative action by a shareholder acting in the name and interest of the corporation. *See Koral*, 276 N.Y. at 217, 11 N.E.2d at 884–85; *Schor v. Wagner*, 1980 WL 1377, at *4 (S.D.N.Y. Feb.20, 1980).

In the event that WMF chooses to renew this application, the parties should either resolve or address this issue in their papers.

## IV. *NO EXTENSION OF DISCOVERY*

Lastly, the request by plaintiff for a further extension of discovery to conduct the depositions of the non-parties, Jackie Kestler and John Thomson, is denied. The plaintiffs have failed to establish "good cause" to warrant a modification of the discovery schedule herein. *See* Fed.R.Civ.P. 16(d). The parties were directed to complete fact witness discovery by December 8, 1997. The latter date was an extension of an earlier fact witness discovery cut-off. Plaintiff had requested that extension and in granting it, the court noted that "there will be no further extensions of discovery." *See Scheduling Order,* dated September 25, 1997. Plaintiff had information concerning the two non-parties and failed to take any action to depose them until now. Plaintiff has failed to establish good cause for not conducting the non-party depositions prior to the discovery cut-off.

The parties are directed to complete expert discovery by March 31, 1998 and appear at a final and settlement conference before me on April 3, 1998 at 11:00 a.m. Clients and principals with authority to settle are directed to be present at that time.

SO ORDERED.