OPINION OF THE COURT
John P. DiBlasi, J.
In what appears to be a matter of first impression, this court is asked to determine whether defenses asserting the comparative fault of parents of a child born with severe birth defects should be dismissed because they are barred as being founded upon claims of “negligent supervision” on the parts of the parents. Upon an analysis of those defenses and the controlling law, the court agrees with plaintiffs that the defenses must be stricken.
I. Factual Background
For several years prior to the birth of the infant plaintiff, Zachary Ruffing (Zachary), both his mother, plaintiff Faye Calton (Ms. Calton), and his father, Michael Ruffing (Mr. Ruffing), were employed by defendant International Business Machines Corporation (IBM) at its semiconductor chip manufacturing facility in East Fishkill, New York (the facility). As part of their work in a section of the facility designated “the Mask House,” they used or were exposed to various chemical substances. In this action it is alleged that either individually, or in combination, these chemicals caused Zachary to suffer numerous birth defects. Based upon Zachary’s injuries and the *681 derivative harm sustained by his parents, this lawsuit was commenced.[1]
IBM and the other defendants in this action have each asserted affirmative defenses of contributory negligence, assumption of risk and comparative fault against both Zachary’s and Ms. Calton’s claims. These defenses are based, in sum, upon defendants’ contention that Ms. Calton “fail[ed] to exercise reasonable care during [her] employment, and * * * fail[ed] to follow proper and recommended precautions, instructions, warnings and restrictions provided by IBM, and/or contained in the Material Safety Data Sheets * * * labels, and warnings of suppliers of products used in [her] employment” (defendants’ mem, at 4). Among the specific assertions made by defendants are that:
“[notwithstanding that] Ms. Calton believed that exposure to certain chemical products claimed to be at issue in this case had been found to cause birth defects * * * and could be hazardous to human fetuses, and that she knew and understood that she was placed on restrictions from certain chemical products in recognition of her expressed concern about exposure to these chemicals while pregnant or nursing]], [she] * * * continued to work in the Mask House and voluntarily chose to perform certain work functions and to socialize in areas where chemicals from which she was restricted were present.” (Ibid.)
As to Mr. Ruffing, defendants similarly claim that he “voluntarily expos [ed] himself to chemicals and disregard [ed] warnings and safety procedures” (id., at 10, n 6).
With the trial of this action scheduled to begin on January 17, 2001, plaintiffs have moved for dismissal of each defendant’s affirmative defenses asserted under CPLR articles 14-A and 16.[2] At the core of this motion is the question of whether, assuming that Zachary’s parents engaged in the conduct alleged by defendants, their acts may be the basis for a reduction of any damage award obtained by either Zachary or Ms. Calton.
*682 II. Defenses to Zachary’s Claims
As a defense asserted under CPLR article 14-A, defendants contend that Zachary’s parents were guilty of contributory negligence which should reduce any judgment obtained in his favor. They also assert defenses of assumption of risk and comparative negligence against Zachary’s claims under CPLR article 16. In response, plaintiffs argue that the contributory negligence defense is unavailable as against Zachary, as a result of the statutory bar set forth in General Obligations Law § 3-111 (hereinafter section 3-111). They further contend that none of the defenses may be asserted in this case because the conduct allegedly engaged in by Zachary’s parents comes within the scope of the immunity given to “negligent supervision.”
A. Contributory Negligence
Section 3-111 provides in full that:
“In an action brought by an infant to recover damages for personal injury the contributory negligence of the infant’s parent or other custodian shall not be imputed to the infant.”
Relying upon the broad language of this statute, plaintiffs argue that a contributory negligence defense cannot be interposed against Zachary’s claims as a matter of law.
In opposing the motion, defendants take the position that plaintiffs’ reliance on section 3-111 “is misplaced” for three reasons (defendants’ mem, at 13). First, they assert that “a plain reading of the statute confirms that an unborn child 4s not covered by [it]” (ibid.). Second, they maintain that the statute “was enacted to bar claims based on negligent parental supervision,” and that their defenses in this case “do not sound in negligent supervision” (ibid.). Finally, they argue that the case law relied upon by plaintiffs does not “consider the contributory negligence or assumption of risk of parents in the context of an infant plaintiff whose alleged injuries were claimed to have been caused preconception or while in útero” (ibid.). None of these arguments is convincing.
1. Application of Section 3-111 to an Unborn Child
It is true that section 3-111 makes no reference to an “unborn, child,” but rather creates a bar against imputing the contributory negligence of a parent to an “infant.” Nevertheless, that does not result in a determination that it has no application to this lawsuit.
*683 The settled law in New York is that “an infant plaintiff has no right of action unless born alive” and that “liability for in útero injuries does not exist unless and until there is a live birth” (see, LaBello v Albany Med. Ctr. Hosp., 85 NY2d 701, 704 [1995]). Consequently, our State’s highest Court has ruled that the earliest date that an infant plaintiff who is injured in útero may “juridically assert [his] claim and sue for relief * * * is * * * the date of being born” (id., at 703).
By its own terms, section 3-111 comes into effect in “an action brought by an infant.” Since Zachary could not bring an action, i.e., have one asserted in his behalf, until he was born, the fact that his injuries were caused before his birth is of no significance for the purposes of application of section 3-111.
Here, an action was commenced in Zachary’s behalf by his mother following his birth. At the time the action was filed, Zachary was an “infant,” within the meaning of section 3-111. For that reason, the court agrees with plaintiffs that defendants may not assert a contributory negligence defense against Zachary’s claims which is premised upon imputation of his parents’ negligence to him.[3]
2. Negligent Supervision
In obvious recognition of the weakness of their statutory interpretation argument, defendants place their greatest reliance upon their second argument, i.e., that section 3-111 was enacted to prevent the assertion against a parent of any claim or defense sounding in “negligent supervision.” It is their position that neither their contributory negligence defenses, nor those based upon assumption of risk or apportionment of liability, raise negligent supervision issues, so that their defenses must be permitted to stand.
a. General Principles
In Gelbman v Gelbman (23 NY2d 434, 439 [1969]), the Court of Appeals “abolish [ed] the defense of intrafamily tort immunity for nonwillful torts.” Just five years later, in Holodook v Spencer (36 NY2d 35 [1974]), that Court recognized an exception to its abrogation of that immunity rule. Specifically, it held that “[a] parent’s negligent failure to supervise a child” will generally “not * * * constitute a tort actionable by the child” (see, LaTorre v Genesee Mgt., 90 NY2d 576, 579 [1997]).
*684 Thereafter, in Nolechek v Gesuale (46 NY2d 332, 341 [1978]), presented with a situation in which a parent placed a dangerous instrument, namely, a motorcycle, into the hands of a child who was blind in one eye and vision impaired in the other, and who died in a tragic accident, that Court carved out what it described as a “sound exception [ ]” to the “sound rule of the Holodook case.” Thus, the Court of Appeals held that “[a] parent who entrusts an infant child with a dangerous instrument creates a danger to all society,” and that “[i]t would be repulsive to permit, under the guise of protecting intrafamily relations, such a parent to escape all liability to a ‘concurrent’ tort-feasor who suffers financial harm as a consequence of the child’s inappropriate use of the dangerous instrument and resulting injury” (id., at 341).
In the years following the Nolechek decision (supra), trial courts endeavored to fit various fact patterns into the general Holodook rule or the Nolechek exception thereto. Then, in LaTorre, the Court took the opportunity to “analyze and harmonize [its] relevant precedents” in this area of the law (LaTorre v Genesee Mgt., supra, 90 NY2d, at 578). That analysis enables this court to resolve the issues presented at bar.
As explained in LaTorre, “Holodook’s foundation * * * is the concern for the inevitable ‘strain on the family relationship’ ” (LaTorre v Genesee Mgt., supra, at 580, quoting Holodook v Spencer, supra, 36 NY2d, at 47). “Preeminently, the [Holodook] Court premised its holding on the importance of limiting potential legalistic litigation intrusions into families, reasoning that ‘[t]he mutual obligations of the parent-child relation derive their strength and vitality from such forces as natural instinct, love and morality, and not from the essentially negative compulsions of the law’s directives and sanctions’ ” (LaTorre v Genesee Mgt., supra, 90 NY2d, at 580-581, quoting Holodook v Spencer, supra, 36 NY2d, at 50). As recognized by the Court of Appeals, “[t]hese express policy concerns persist and prevail” (LaTorre v Genesee Mgt., supra, 90 NY2d, at 581).
To give effect to the goals of these policy considerations, in resolving questions related to supervision of infants, the courts must look to the nature of the duty that has been breached. Thus, the more general rule barring recovery for negligent supervision applies where injury to an infant results from a breach of a duty owed solely to the infant (see, Holodook v Spencer, supra, 36 NY2d, at 50; see also, Grivas v Grivas, 113 AD2d 264, 266 [2d Dept 1985]). To be contrasted with that are situations in which a parent “breaches a duty owed to the world *685 at large,” which gives rise to a viable cause of action in favor of the infant and against the parent (see, Hurst v Titus, 77 AD2d 157, 158 [4th Dept 1980]). With these principles in mind, the court turns to the question of the specific type of analysis to apply to the facts presented on this motion.[4]
b. Exposure of the Infant Plaintiff
As noted, defendants’ position with respect to their affirmative defenses, including that of contributory negligence, is that both of Zachary’s parents, but most significantly, Ms. Calton, caused him to be unnecessarily exposed to various chemicals during the course of their employment with IBM. Relying upon those claims, they assert that their contributory negligence defenses do not sound in negligent supervision because, rather than being a case where parents “failed to prevent their child from engaging in dangerous activities,” this is a situation where there was “actionable negligence” on their part (defendants’ mem, at 7). Building upon that contention, they argue that this case does not involve the type of conduct that was meant to fall within the protection of section 3-111.
Certainly, there are numerous cases in which courts have found a parent’s conduct to fall outside the protection of the Holodook rule. Indeed, in many of those cases, some of which are relied upon by defendants, the courts have used language indicating that their decisions turned on the presence of affirmative acts of negligence by a parent.
Thus, for example, in Cantave v Peterson (266 AD2d 492, 493 [2d Dept 1999]), in a lead paint exposure action, the defendant was permitted to assert a counterclaim against the parent which alleged that the infants’ injuries “were caused solely or in part by the mother’s having painted the apartment herself and by her having failed to promptly seek medical attention for the children.” Similarly, in Cox v Cheaib (231 AD2d 841, 842 [4th Dept 1996]), an affirmative defense and counterclaim were determined not to be based upon negligent supervision where a child was burned by scalding water while being bathed by his father.[5] Likewise, in Hurst v Titus (supra) a parent’s act of negligently causing a fire was held sufficient to sustain a cause *686 of action against her by her child even though her failure to rescue her daughter fell within the protection of the negligent supervision rule. So too, in Goedkoop v Ward Pavement Corp. (51 AD2d 542, 543 [2d Dept 1976]), a counterclaim was properly asserted against a father who had negligently maintained blasting caps in the basement of his home, one of which exploded, injuring his child, while the infant was attempting to put the point of a compass into it. Finally, in Cooper v County of Rensselaer (182 Misc 2d 487, 492 [Sup Ct, Rensselaer County 1999]), a contributory negligence defense was permitted to stand in a lead paint exposure case where it was alleged that after being apprised of the existence of a lead paint problem in their apartment, the parents not only “continued to refuse to leave the apartment * * * [and] failed to clean up the paint chips or seal the exposed lead paint,” but they also “changed the apartment locks and denied the [landlords] access to the premises” (id., at 491).
According to defendants, these cases cited by them[6] establish that “[w]here a parent has been guilty of ‘active and affirmative negligence’, the culpable conduct of a parent is appropriately considered” (defendants’ mem, at 8). Here, they contend that “[d] espite warnings and her own beliefs concerning the risks posed, [Ms. Calton] took ‘steps that expose[d] the child anyway,’ by voluntarily socializing in areas where she knew chemicals were present from which she had been medically restricted at her own request and by performing certain work functions in restricted areas which could easily have been conducted elsewhere” (id., at 10). Applying their view to the facts involved at bar, defendants argue that “ [t] o the extent *687 that plaintiffs claim that chemical exposure of either parent caused the infant plaintiff’s injuries in this case, which Defendants deny, the defenses asserted clearly implicate the type of culpable conduct on the part of Faye Calton and Michael Ruffing that is actionable under New York law” (id., at 9).
This court does not agree with defendants that the conduct attributed to Zachary’s parents “cannot be considered, under any recognizable definition of the phrase, ‘negligent parental supervision’ ” (defendants’ mem, at 10). This is because defendants’ analysis of the distinction between actionable negligence by a parent and nonactionable negligent supervision is flawed.
The “factor that distinguishes” instances in which actionable negligence has been found from “action [s] predicated solely upon negligent parental supervision is the scope of the duty — a duty ordinarily owed apart from the family relationship — and not the fact the dangerous condition was created by an affirmative act of the parent” (Grivas v Grivas, supra, 113 AD2d, at 268 [emphasis supplied]). Thus, in Grivas, summary judgment dismissing a claim that a mother was negligent in her operation of a lawn mower was denied where that claim was attacked as being based upon the mother’s negligent supervision of her child. There, the mother had left the lawn mower running while she went into her house to answer the phone. While she was inside, the child went to retrieve a ball that had rolled near the lawn mower, and was injured when her hand came in contact with the rotating blades of the unattended mower. As viewed by the Appellate Division, under those facts, both the mother’s failure to give the child instructions to stay away from the mower and her “affirmative act of permitting the child to play in proximity to a potentially dangerous condition would merely constitute negligent parental supervision” (id., at 269). Rather, what exposed the mother to liability was her alleged breach of a “duty owed to all,” namely, “the duty to exercise reasonable care in the operation of a lawn mower” (ibid.). As explained by the Grivas Court, “[t]he [infant] plaintiff, who went to retrieve her ball * * * occupied the same position as any neighborhood child with respect to the operator’s duty of care” (ibid.).
That this duty analysis is the correct one to be applied is apparent from other decisions following that rendered in Grivas (supra). For example, in Burgess v Cappola (251 AD2d 1001 [4th Dept 1998]), an action arising from an infant’s fall from a *688 second-story window of his parents’ apartment, the Appellate Division held that the trial court properly dismissed the affirmative defenses asserted by the defendant owners that were based upon a claim that the parents’ negligence caused their son’s accident. In so ruling, that Court specifically “reject[ed] defendants’ contention that, as tenants, plaintiffs owed a duty to the world at large to maintain the windows in a manner that would prevent infant children from crawling through them and falling” (id.). Similarly, in Wallace v Pacelli (221 AD2d 778 [3d Dept 1995]), the defendants were barred from asserting a counterclaim alleging that the parents of a deceased child were negligent for failing to prevent him from playing in a cul-desac near their home, as a result of which he was struck by defendants’ car while chasing a ball. In that Court’s view, defendants alleged “a breach of no duty, apart from that stemming from the family relationship” (id., at 779). And even where parental liability has been found, the same analysis has been applied, as in Leek v McGlone (140 AD2d 413 [2d Dept 1988]), where a child was injured after she was provided with a minibike with defective brakes. As determined by the reviewing Court, “[o]nly this allegation premises liability upon an alleged breach of duty to the world-at-large based on the defective nature of the minibike itself rather than upon the breach of a duty which arises solely from the familial relationship of the parties” (id., at 413-414).
Moreover, a review of the cases relied upon by defendants at bar reveals that they too support the duty analysis. For example, in Cantave v Peterson (266 AD2d 492, supra), the mother’s liability was based upon the fact that she painted the apartment, breaching the duty not to expose others who came to her apartment to a lead paint condition. A breach of that same duty warranted the conclusion in Cooper v County of Rensselaer (182 Misc 2d 487, supra) that the parents’ negligence could be assessed in determining the liability of the landlords for the exposure of children to lead paint. No differently, in both Hurst v Titus (77 AD2d 157, supra) and Goedkoop v Ward Pavement Corp. (51 AD2d 542, supra), parental liability was actionable because it created a risk of danger to the public in general, through the starting of a fire in Hurst and the creation of an explosion risk in Goedkoop.[7]
*689 c. Breach of Duty by Zachary’s Parents
Applying the duty analysis to the facts in this case, the court agrees with plaintiffs that the negligence attributed to Ms. Calton and Mr. Ruffing falls within the scope of negligent supervision. Certainly, by virtue of the anatomical relationship between an unborn child and his mother, everywhere Ms. Calton traveled, so went Zachary while he was in útero. Even if Ms. Calton was aware of the potential risks of the chemicals to which she was exposed, however, her failure to remove herself from the locations where they were being used is only a breach of a duty owed to her unborn child, and not to the world in general (see, Navaro v Ieraci, 214 AD2d 713 [2d Dept 1995] [trial court properly dismissed affirmative defense which asserted, inter alia, that mother “negligently failed to protect the infant from the alleged hazardous conditions known to her in the apartment”]; see also, McNamara v Banney, 249 AD2d 950, 951 [4th Dept 1998] [no third-party claim permissible against parents whose child fell through raised window in their apartment because the action of opening the window “violated [no] duty owed to the world at large” but rather “exposed only the infant son and his sibling to danger and thus was encompassed within the intrafamily immunity for negligent parental supervision”]).
Moreover, acceptance of defendants’ position would render it “too easy to avoid the Holodook holding by characterizing some act by a parent as an affirmative step in creating the danger for the child” (see, Zikely v Zikely, supra, 98 AD2d, at 816). If this approach was adopted, every time a parent brought his child to a neighbor’s house for a play date, knowing that a dog was on the premises which might bite the child, or permitted his child to play ball in the street, aware that a car might run over the child, or continued to reside in an apartment which had some type of potentially dangerous condition, in the event of an injury to the child, the parent’s actions would give rise to a defense against the child’s personal injury claim. Such a result is wholly inconsistent with the acknowledged purpose of *690 the Holodook rule (see, LaTorre v Genesee Mgt., supra, 90 NY2d, at 580-581), and is rejected by this court, as it has been by others (see, Wallace v Pacelli, 221 AD2d 778, supra [child injured playing in street]; see also, Smith v Sapienza, 73 AD2d 224 [2d Dept 1980], affd 52 NY2d 82 [1981] [child bitten by neighbor’s dog]; Brown v New York City Hous. Auth., 250 AD2d 719, 720 [2d Dept 1998], appeal dismissed 92 NY2d 1045 [1999], lv denied 93 NY2d 805 [1999] [defendant could not seek contribution from parent whose child was burned when her leg was caught between two exposed steam pipes in her bedroom]).
Since, even assuming the truth of defendants’ claims, none of the conduct allegedly engaged in by Ms. Calton and Mr. Ruffing breached a duty owed to the world at large, the affirmative defense of contributory negligence relied upon by defendants is but an “attempt to assert a negligent supervision claim against plaintiff[s] * * * in contravention of well-settled New York law” (see, Morales v Felice Props. Corp., 221 AD2d 181 [1st Dept 1995]). Accordingly, the court rejects defendants’ argument that their claims do not sound in negligent supervision and are not subject to the bar of section 3-111.
There being no reason, then, for not finding section 3-111 applicable to defendants’ contributory negligence affirmative defenses as asserted against Zachary’s claims, those defenses are stricken.
Assumption of Risk and Comparative Negligence
As noted, defendants also assert affirmative defenses against Zachary’s claims under CPLR article 16 based upon the assumption of risk by his parents and their comparative negligence with respect to his injuries. These defenses are also stricken.
Contrary to defendants’ view, each of these defenses, like the contributory negligence defense, are merely negligent supervision claims, differently worded (see, Morales v Felice Props. Corp., supra). Based upon the duty analysis set forth above, there is no legal basis for the assertion of these defenses against Zachary’s causes of action.
III. Defenses to Ms. Calton’s Claims
Defendants have interposed the same three affirmative defenses against Ms. Calton that they have asserted against Zachary. Like a counterclaim or cross claim seeking contribution or indemnification, these three defenses have as their goal the reduction of defendants’ liability to Ms. Calton based upon *691 her alleged exposure of her child, in útero, to the various chemical substances.
As has been recognized, “a third party cannot impose liability upon parents for contribution or indemnification unless the culpable act committed by the parents violated a duty owed to the world at large” (McNamara v Banney, supra, 249 AD2d, at 951). This is because, there being no cause of action against the parent by the child, no liability can be attributed to the parent under the comparative negligence theory (see, Holodook v Spencer, 36 NY2d 35, supra). According to plaintiffs, application of that principle warrants dismissal of any affirmative defense asserting the comparative or contributory negligence of a parent even as to his or her own claims (see, Burgess v Cappola, 251 AD2d 1001, supra; see also, Wallace v Pacelli, 221 AD2d 778, supra).
Contrary to plaintiffs’ view, to the extent that these defenses are interposed only against Ms. Calton’s derivative claims, they are not barred by the Holodook rule. Unlike the impact of a contribution claim, these defenses do not have the effect of “diminish [ing] the value of the child’s recovery” by allowing a third party to recover against the parent who, together with the child, constitutes “a single economic unit” (see, Holodook v Spencer, supra, 36 NY2d, at 47).
These defenses may not be asserted against Ms. Calton’s claims, however, for a different reason. Her claims are derivative in nature. Where a derivative claim is sued upon, the contributory negligence or comparative fault of the injured party may be attributed to the party asserting the derivative claim (see, Maidman v Stagg, 82 AD2d 299, 305 [2d Dept 1981]). In this case, because no fault can be assigned to Zachary, there is no basis for the assertion of any of the defenses against Ms. Calton’s claims (see, Gallina v State of New York, 115 AD2d 251 [4th Dept 1985] [father’s derivative cause of action not subject to reduction where no fault was attributed to infant son]). Therefore, the court also strikes the affirmative defenses of contributory negligence, assumption of risk and comparative negligence to the extent that they are interposed against Ms. Calton’s claims.
IV. Conclusion
As recognized by the Court in LaTorre:
“ ‘it is not possible to state an exact rule as to the scope of “parental discretion,” ’ for ‘it is clear that the parent-child relationship remains a special one *692 and that not every act or omission by a parent will be regarded as actionable negligence, even if, as to some other persons, negligence might be found to exist’ ” (LaTorre v Genesee Mgt., supra, 90 NY2d, at 583, quoting Prosser and Keeton, Torts § 122, at 908 [5th ed]).
For that reason, this State’s highest Court has determined that “step-by-step * * * incrementalism, is appropriate” in deciding issues arising from claims that parents have failed to adequately protect their children (see, LaTorre v Genesee Mgt., supra, at 583 [emphasis supplied]).
In this case, defendants ask this court to diminish the immunity given to parents from lawsuits and third-party actions arising from decisions concerning the well-being of their children by denying protection to the parents of an unborn child who have breached no duty apart from that which arises from their relationship to that child. Such a step is far from incremental, is not warranted on the facts presented, and shall not be taken by this court.

. This is only the first of approximately 200 such cases which have been or are expected to be filed against some or all of the defendants at bar. Pursuant to an earlier court order, this case is to be tried first as the “bellwether” case.

. This motion is one of 28 that have been filed by the parties shortly in advance of trial that seek summary judgment and various forms of in limine relief.

. Defendants’ third argument, that the case law relied upon by plaintiffs is not addressed to the defenses of contributory negligence or assumption of risk of parents in the context of claims for in útero injuries, is but another formulation of this first argument, and is rejected as likewise unpersuasive.

. In determining this motion, the court is required to assume the truth of the factual claims set forth in each of the affirmative defenses (Krantz v Garmise, 13 AD2d 426, 429 [1st Dept 1961]).

. But compare Zikely v Zikely (98 AD2d 815 [2d Dept 1983], affd 62 NY2d 907 [1984]), where a mother’s act of turning on a hot water faucet to prepare a bath and leaving the room was held to be negligent supervision *686 barring a cause of action for injury to her child sustained when the infant, “left unsupervised, wandered into the bathroom and fell into or otherwise entered the tub.”

. In addition to the cases discussed above, defendants rely upon the decisions in Yun Jeong Koo v St. Bernard (89 Misc 2d 775 [Sup Ct, Queens County 1977]) and Arriaga v Laub Co. (233 AD2d 244 [1st Dept 1996]). In Yun Jeong Koo, affirmative defenses of contributory negligence and assumption of risk survived dismissal in a case where defendants alleged that the parent had “ ‘pushed the infant in such a way as to cause contact between the defendant’s vehicle and the infant’ ” (89 Misc 2d, at 779). Likewise, in Arriaga, a counterclaim was permitted against a parent who created the hazardous condition that caused her children’s injuries and who “failed to seek adequate and timely medical care for the infant[s]” (233 AD2d, at 245; but compare, Fontanez v Libra 730 Co., 256 AD2d 125 [1st Dept 1998] [First Department “decline(d) to follow (its own) dictum in Arriaga” and ruled that certain claims, including one alleging “failure to promptly obtain medical care for the child,” did not “fall( ) outside the scope of the nonactionable tort of negligent parental supervision”]).

. The court recognizes that in Cox v Cheaib (231 AD2d 841, 842, supra), the Appellate Division, Fourth Department, permitted an affirmative defense to proceed based upon its finding that it alleged “active and affirmative *689 negligence of [the infant’s] father while bathing his son.” To the extent that this case may have been decided upon an “affirmative negligence” analysis, it is inconsistent with the Second Department decision in Zikely v Zikely (98 AD2d, at 816, supra), which specifically rejected the argument that by filling a bathtub with hot water the parent therein had created a dangerous condition exposing her to a damages claim in favor of her child. Because this court sits in the Second Department, it must follow the approach taken in Zikely (see, Mountain View Coach Lines v Storms, 102 AD2d 663, 664 [2d Dept 1984]), whose reasoning, in any event, it finds to be more persuasive.