**Elaine MATTHEWS, Plaintiff,**

v.

**Regina A. MALKUS and Westchester County Medical Center, Defendants.**

**No. 04CIV.5561(CM)(LMS).**

United States District Court, S.D. New York.

Dec. 23, 2004.

Elaine Malkus, Tarpon Springs, FL, Plaintiff Pro Se.

Robert J. Gironda, White Plains, NY, Counsel for Defendant.

## MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S CHOICE OF LAW MOTION AND PROVIDING LIMITED DISCOVERY SCHEDULE

McMAHON, District Judge.

Plaintiff Elaine Matthews sued defendants Regina A. Malkus and the West-

chester Medical Center (collectively, "defendants") for medical malpractice and/or professional negligence and/or professional recklessness, negligent misrepresentation, defamation/slander, false imprisonment, false light, invasion of privacy/trespass, violation of civil rights and constitutional guarantees, and intentional and/or negligent infliction of emotional distress. Plaintiff now asks the court to declare that Florida law applies to this case. She also asks defendants be required to respond to plaintiff's previously served discovery demands. Defendant has made a cross motion for summary judgment on all of plaintiff's claims pursuant to Fed.R.Civ.P. 56.

Plaintiff is entitled to limited discovery before being required to answer defendants' summary judgment motion. Her choice of law motion is, however, denied.

### I. Facts

The facts as alleged by the parties are as follows:

Just after midnight on Thursday, April 3, 2003, plaintiff Matthews dialed 411 and asked the information operator for the number of a 24–hour help line in the 914 area code. Complaint ("Cmplt.") at ¶ 9. Matthews is originally from Westchester County where 914 is the area code. *Id.* at ¶ 10. Matthews was given the number for the Westchester County Department of Social Services, which, after hours, has its calls transferred to the Westchester County Police. *Id.* at ¶ 11. When Matthews' call was answered by the police department, Matthews explained that she was trying to reach a 24–hour help line. *Id.* at ¶¶ 12, 13.

Matthews was subsequently transferred to another number, where defendant, Malkus, answered the phone. Cmplt. at ¶ 14; Malkus Aff. at ¶ 4. Matthews asked Malkus for her number so that she could call her right back. Cmplt. at ¶ 14; Malkus Aff. at ¶ 7. Malkus gave Matthews her

number at the Westchester County Medical Center, and Matthews called her there. *Id.* at ¶ 15; Malkus Aff. at ¶¶ 7, 8.

During the course of the conversation, Matthews stated either "I wish I were dead" or "I want to die." *Id.* at ¶ 20; Malkus Aff. at ¶ 13. Also revealed during the conversation was that Malkus had caller identification, so she knew Matthew's phone number and where she was calling from. *Id.* at ¶¶ 23, 24; Malkus Aff. at ¶¶ 17, 20. Malkus told Matthews that she was not going to do anything, but that Matthews should call her local or nearest hospital. *Id.* at ¶ 26; Malkus Aff. ¶¶ 18, 19. Matthews and Malkus then both hung up. *Id.* at ¶ 27.

At some point thereafter, Malkus called law enforcement officials in Pinellas County, Florida and told them that Matthews was having "suicidal ideations." *Id.* at 47; Malkus Aff. at ¶ 23. The police department gave Malkus the number for a "PENHS hotline." Malkus Aff. ¶ 23. Malkus called the hotline number and spoke to someone named "Oscar" who said he would call Matthews. Malkus Aff. at ¶¶ 24, 25.

Oscar contacted the Pinellas Police Department to request that they make a welfare check of Matthews at her home. Malkus Aff. at ¶ 26. At around 9:00 a.m. on the morning of April 3, two law enforcement officers came to Matthews' condominium and rang her doorbell. Cmplt. at ¶¶ 30–31. After Matthews opened the door, the police took her to a nearby hospital. *Id.* at ¶¶ 31–32. Some neighbors observed Matthews being placed in the police car. *Id.* at ¶ 33.

Matthews was kept at the hospital until she could be evaluated by the attending psychiatrist the following day. *Id.* at ¶ 35. At around 12:30 p.m. on Friday, April 4, Matthews was examined by the hospital's psychiatrist. *Id.* at ¶ 40. Approximately

two hours later, she was released from the hospital. *Id.* at ¶ 41. When Matthews returned home, her cat's food and water bowls were empty and her sick cat died the next day. *Id.* at ¶ 41, 44.

Matthews claims that as a result of these events, she "severely suffered damage to her person, personal humiliation and fear, past and future mental pain, anguish and suffering, past and future emotional distress, past and future inconvenience, the past and future loss of capacity to enjoy life, and other damages." Cmplt. at ¶ 79.

## II. Procedural History

This is the second law suit filed by plaintiff in this matter. Plaintiff elected to withdraw her initial suit, *Matthews v. Westchester Medical Center*, 03 Civ. 4011, because she was disappointed with how this court questioned her regarding the underlying basis for her lawsuit at the initial pre-trial conference.

Matthews then filed a second suit in federal court in Florida. On defendants' motion, it was transferred from the United States District Court in the Middle District of Florida to the Southern District of New York in July 2004. I had warned Matthews, prior to the withdrawal of her prior suit that, if she filed a new action it would likely be transferred back to me. And so it has transpired.

## III. Plaintiff's Motion for Application of Florida Law Is Denied

■ New York applies the interest analysis test to determine choice of law. *See Babcock v. Jackson*, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963). Under this analysis, I must determine the law of the state with the most significant inter-est in the outcome of the action. *White v. ABCO Eng'g Corp.*, 221 F.3d 293, 301 (2d Cir.2000). In a negligence action, the plaintiff's domicile and the locus of the tort traditionally are the most significant factors. *Celle v. Filipino Reporter Enterprises Inc.*, 209 F.3d 163, 175 (2d Cir.2000) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *White*, 221 F.3d at 301; *Schultz v. Boy Scouts of America*, 65 N.Y.2d 189, 197, 480 N.E.2d 679, 683, 491 N.Y.S.2d 90, 94 (1985)). If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred generally will apply, as that jurisdiction has the greatest interest in regulating conduct within its borders. *White*, 221 F.3d at 301; *Schultz*, 65 N.Y.2d at 196, 491 N.Y.S.2d 90, 480 N.E.2d 679.

■ Under the "interest analysis" approach to which New York subscribes, when the domiciles of the parties differ, the location of the injury determines the governing substantive law absent special circumstances. *Gray v. Busch Entertainment Corp.*, 886 F.2d 14, 15 (2d Cir.1989) (citing *Bader by Bader v. Purdom*, 841 F.2d 38, 40 (2d Cir.1988)).[1] Although the alleged injuries took place in Florida, which would typically lead to the applicability of Florida law, there are special circumstances in this case that render it inappropriate to apply Florida law. The allegedly tortious conduct took place in New York. New York clearly has a greater interest than Florida does in regulating the conduct of a New York hospital and its employees. Moreover, plaintiff voluntarily chose to avail herself of New York's public services by specifically requesting a hotline number in Westchester County, New York, rather than in

---

**1.** Plaintiff's decision to bring a case in a particular state because the laws of that state are more favorable to her, has no bearing on whether that state's laws are applicable to the case. In fact, it was to prevent precisely this type of forum shopping for favorable laws that gave rise to much federal jurisprudence.

Florida, where she lived. Because of these special circumstances, plaintiff's motion to apply Florida law in lieu of New York law is denied. I will apply New York law to plaintiff's allegations.

## IV. Plaintiff's Request that Fed. R.Civ.P. 12(b)(6) Be Considered Moot Is Moot

Plaintiff requests that Fed.R.Civ.P. 12(b)(6) be considered moot and that defendants be compelled to provide responses to plaintiff's previously served discovery demands. Defendants, however, have not invoked Rule 12(b)(6). Instead, they move for summary judgment under Fed.R.Civ.P. 56.

I thus interpret plaintiff's unusual request to nullify Rule 12(b)(6) as a response pursuant to Fed.R.Civ.P. 56(f). Rule 56(f) permits a court to order a "continuation" of a summary judgment motion to permit a party against whom such a motion has been filed to take discovery from the moving party. Because defendants have submitted affidavit testimony from defendant Malkus, and because there has been no discovery to date, I deem it appropriate to invoke Rule 56(f) and to permit plaintiff to take limited discovery from defendants before she responds to defendants' motion. *See infra.*, pp. 402–03.

## V. Defendants' Motion for Summary Judgment

Defendants timely filed the instant motion for summary judgment pursuant to Fed.R.Civ.P. 56. However, the motion did not explain to Matthews, a pro se litigant, her obligations when such a motion was made. I am providing her with the requisite notice now.

The defendants in this case have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. This means that the defendants have asked the Court to decide this case without a trial, based on written materials, including declarations, submitted in support of the motion. The claims plaintiff asserts in her complaint may be dismissed without trial if plaintiff does not respond to the motion by calling the court's attention to evidence, in the form of her own sworn affidavits (or declarations) or other papers as required by Rule 56(e). An affidavit, or declaration, is a sworn statement of fact based on personal knowledge that would be admissible evidence at trial.

Rule 56 provides that a plaintiff may NOT oppose summary judgment simply by relying on the allegations in her complaint. Rather, she must submit evidence, such as witness statements or documents, countering the facts asserted by the defendant and raising an issue of fact for trial. Any witness statements which may include plaintiff's own statements, must be in the form of affidavits or declarations. She may submit affidavits or declarations that were prepared specifically in response to defendants' motion for summary judgment.

Any issue of fact that plaintiff wishes to raise in opposition to the motion for summary judgment must be supported by affidavits or other documentary evidence contradicting the facts asserted by defendants. If plaintiff does not respond to the motion for summary judgment on time with affidavits or documentary evidence contradicting the facts asserted by the defendants, the court may accept defendants' factual assertions as true. Judgment may then be entered in defendants' favor without a trial.

■ Because defendants moved for summary judgement prior to discovery but have offered evidence in support of that motion (namely, the affidavit of defendant Malkus), plaintiff is entitled to discovery prior to answering the defendants' Rule 56 summary judgment motion. *See* Fed. R.Civ.P. 56(f). However, the discovery requests already served by plaintiff are far

more broad than is necessary for her to respond to the issues raised by the motion. I therefore order that the following discovery be taken in the next 45 days.

Plaintiff is entitled to question defendant Malkus, either in person or through written interrogatories. If plaintiff chooses to take the deposition of Malkus, plaintiff will be responsible for the cost of providing a court reporter to transcribe the deposition. Any live deposition will take place in the United States Court House here in White Plains.

Plaintiff is also entitled to any and all documents in the files of the Westchester Medical Center or of defendant Malkus that relate to this incident.

All discovery will be done under the supervision of Magistrate Judge Lisa Margaret Smith. A copy of the referral order to Judge Smith is attached. Following the conclusion of the discovery period, plaintiff will have 10 days to file a substantive response to defendants' motion for summary judgment.

This constitutes the order and decision of the court.